266 A.2d 249.

ANGELO PICCERELLI *et ux. vs.* ZONING BOARD OF REVIEW OF THE TOWN OF BARRINGTON.

JUNE 11, 1970.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

POWERS, J.  This is a petition for certiorari to review the action of the respondent board in granting an application for an exception or variance.  We issued the writ and in compliance therewith the pertinent papers were duly certified to this court for our examination.

It appears therefrom that on August 28, 1968, Colonial Laundries, Inc. applied for an exception or variance to operate a dry cleaning store in a C commercial zone and was joined therein by the owner of the property involved, County Road Realty Corporation.  The land consists of three lots, two of which were unimproved.  The third and largest of the three contains a shopping center with a Newport Creamery, certain other stores and parking facilities.

The three lots in question abut County Road, a heavily travelled main highway.  The largest lot also abuts Cady Road at its intersection with County Road.  To the north of and also abutting both roads is another shopping center containing a restaurant, certain stores and parking facilities.

Barrington Town Hall is diagonally across from the property in question on the opposite side of County Road.  To the south and also abutting the applicant's property is commercial property owned by petitioners, consisting of a

plumbing business and a beauty parlor. All of the surrounding land thus referred to and considerable other property in the vicinity are in a C commercial zone.

The record further establishes that a dry cleaning store in which some cleaning is to be done is not a permitted use in a C commercial district. The only permitted use regarding dry cleaning establishments contained in the ordinance is set forth in C.2, §1-10-2(b) thereof. It lists as a permitted use:

"Clothes cleaning and Laundry Agency *for pickup service only or Pressing Establishment.*" (emphasis ours)

Since applicant, Colonial Laundries, Inc., was seeking to operate a dry cleaning establishment not limited to pickup or pressing services, it applied to the respondent board for permission to conduct an establishment where a limited cleansing operation would be conducted on the premises. While the application is in form one for a variance or special exception, it is readily apparent from the board's decision that the application was considered by it to be one for a special exception authorized by C.2, §1-15-2-g and C.2, §1-15-2-1.[1]

---

[1]C.2, §1-15-2-g provides:

"Special Exceptions

The Zoning Board of Review shall have power to grant special exceptions under the conditions hereinafter set forth:

(1) Such special exceptions shall be granted when the judgment (sic) of the Board the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured.

(2) Such special exceptions shall be granted only in specific cases, after public notice and hearing and subject to appropriate conditions and safeguards.

(3) Such special exceptions shall be granted only to the extent and in the specific situations hereinafter enumerated in the following sections of this chapter."

C.2, §1-15-2-1 provides:

"Extension Where Appropriate

The Board may authorize by special exception in any district, modifi-

Pursuant to the public notice given as required by G. L. 1956, §45-24-18, a hearing on Colonial's application was called to order at 7:30 in the evening of September 19, 1968. The applicant's president thereupon made an opening statement in which he outlined the nature of the services to be rendered if the application were approved. He stated that the proposed establishment would replace his company's branch store presently located on the corner of Maple Avenue and County Road in Barrington, but would implement service to the public by installing certain equipment which would make possible limited dry cleaning on the premises.

Having concluded his opening statement, as herein paraphrased, applicant's president thereupon called three witnesses to testify in support of the application. These were the architect employed by the applicant, an expert on the type of equipment to be used, as well as the applicant's vice-president in charge of dry cleaning. It is the substance of their combined testimony that the premises proposed would in all respects conform to building regulations as well as lot-line restrictions and that the chemicals to be used, although volatile, were not flammable. Moreover, the evidence they adduced is competent to establish that there would be no escaping of noxious fumes.

At the conclusion of their testimony, an attorney for instant petitioners stated that he and his client, Angelo Piccerelli, were present and raising a question as to the board's jurisdiction to hear and consider Colonial's application. The question thus raised was premised by counsel on petitioners' insistence that they had not received personal notice of the pending application and the hearing thereon. It appears from the record that petitioners are

cation of the requirements of this Ordinance as said Board may deem necessary to secure development of a lot in harmony with the character of the neighborhood and appropriate to the uses authorized in such district.^

the owners of property abutting that of the subject land.[2]

There then ensued a discussion which was followed by petitioner Angelo Piccerelli's sworn testimony that he had not received the personal notice to which as an abutter he was entitled under the ordinance. It was then determined that the rights of the latter would be thoroughly protected if the hearing were continued for one month. During this interval, petitioners' counsel agreed without objection from his client, Angelo Piccerelli, that there would be ample opportunity to examine the application, review the supporting evidence already compiled and otherwise prepare for meaningful opposition to the granting of the application. The hearing was thereupon continued to October 17, 1968.

When the hearing was resumed on October 17th, applicant's president again stated the purpose to be served if the special exception were granted, and summarized the testimony of applicant's witnesses, on whose expertise in the operation of a dry cleaning establishment, applicant was attempting to show that the special exception use, if permitted, would not be inimical to public health, safety, morals and welfare.[3]

---

[2]C.2, §1-15-1-b of the Barrington Zoning Ordinance provides, in pertinent part:

"Meetings

Prior to decision on such petitions, the Board of Review shall hold a public hearing thereon. At least 7 days prior to said hearing [notice] thereof shall be mailed to the petitioner and to the abutting owners of all other property deemed by the Board to be affected thereby as they appear in the current records of the Board of Assessors and also notice thereof shall also be advertised once in a newspaper of general circulation in the Town of Barrington at least seven (7) days prior to the public hearing."

[3]In Nani v. Zoning Board of Review, 104 R. I. 150, 242 A.2d 403, this court held that public convenience and welfare when made a condition precedent to the grant of a special exception, as is the case here, hinges on a showing that the proposed use will not result in conditions that will be inimical to public health, safety, morals and welfare.

At the conclusion of this summation, petitioners' counsel, whom the record does not indicate as possessing relevant expertise, made representations to the board that the chemicals to be used were injurious to health. He argues that applicant had failed to demonstrate the contrary and pointed to the proposed installation of fans which, he contended, would be used to carry off noxious odors. Consistent with their previous testimony, applicant's witnesses again stated that the chemicals would be contained within the cleansing machinery and that the fans were designed for cooling the building and not carrying off odors.

Several remonstrants were also heard. They were residents of the neighborhood who objected to the granting of the special exception on the grounds that they too feared escape of noxious odors and were concerned for traffic hazards resulting from congestion engendered by the proposed use. With regard to these objections, it suffices to note that they were expressions of opinions by persons not shown to qualify as experts on the subjects. Hence these opinions lacked probative force. See *Thomson Methodist Church* v. *Zoning Board of Review*, 99 R. I. 675, 210 A.2d 138.

On January 7, 1969, the board filed a discursive decision granting the application subject to certain limitations. After stating in meaningful detail its familiarity with the subject property and neighborhood and pointing to the evidence on which it relied, the board found

> "* * * that the proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare. The Board also finds that the proposed use will not adversely affect the appropriate uses of neighboring properties. The Board finds that the proposed use is necessary to secure development of the premises in harmony with the character of the neighborhood and that the proposed use is appropriate to the uses authorized in the district."

It is of significant materiality to note that the language employed by the board in the closing quoted sentence points directly to its jurisdiction as set forth in §1-15-2-1.

From this decision petitioners appealed to this court. In connection therewith they make a number of contentions, three of which are more concerned with procedure than substance. These are that, although the hearing was recessed to October 17th, the board reached its decision at the close of the September 19th session; that, although assured at the recessed September 19th hearing they would have an opportunity to examine the record compiled prior to petitioner Angelo Piccerelli's appearance on the evening of September 19th, there is no way to be certain that all material documents were in fact made available to them, and that the decision of the board, having been filed several months after the hearing, did not comply with the requirement of the ordinance that notice of decisions be given "forthwith." C.2, §1-15-1-d. As to this latter contention, suffice it to note that petitioners point to nothing that would so much as suggest they were prejudiced.

Neither is there merit to their contention that the board reached its decision prior to the close of the hearing which had been recessed to October 17th. The minutes of the hearing expressly state that the board reached its decision after the close of the October 17th session. Moreover, from an examination of the October 17th transcript and the reference in the decision to matters raised by petitioners at that time, it is obvious that the decision was reached only after consideration of the full record.

Their final procedural contention, namely, that they could not be certain that the full record had been made available to them, arises out of a course of conduct to which petitioner, Angelo Piccerelli, expressly consented. The transcript of the September 19th session discloses that when petitioner, Angelo Piccerelli, protested that he had

not received personal notice and was therefore unprepared, he was asked whether he wished to have the application continued for a month and a new hearing commenced thereon. To this petitioners' counsel replied that this would not be necessary. It would suffice, counsel agreed in essence, if the present hearing were recessed for one month and all documents and evidence thus far made part of the record were made available to petitioners. They do not now contend that they were denied access to the record, but rather complain that the full record may not have been submitted. Our examination of the record persuades us that their fears are ungrounded, and in any event, by their election, it is an area of speculation we will not explore.

Turning to substance, petitioners further contend that the board lacked jurisdiction to authorize the special exception granted. So doing, they ignore the provisions of §§1-15-2-g and 1-15-2-1 of the ordinance set forth in footnote 1 of this opinion.

Passing on ordinance provisions very similar in *Harrison* v. *Zoning Board of Review*, 74 R. I. 135, 59 A.2d 361, this court stated at pages 143 and 365 respectively:

> "Unless it is against the public interest to grant the exception the board are expressly authorized by the ordinance to grant it if they *deem* that the use requested is in harmony with the character of the neighborhood and the uses appropriate to the district. The board have made such a finding and there is some evidence to support it."

Nor is there merit to petitioners' penultimate contention, namely, that since the application was addressed to §1-15-2-g without reference to §1-15-2-1, the board was required to treat such application as one for a variance, as to which there is admittedly no evidence whatsoever. In *Winters* v. *Zoning Board of Review*, 80 R. I. 275, 96 A.2d 337, this court held that an application for a special ex-

ception or variance which did not specify the provision of the ordinance under which relief was sought must be considered as one for a variance unless the record otherwise makes clear that a claim for a specific exception is being made. Here, the record makes it abundantly clear that applicant was seeking the relief which the board was authorized to grant under §1-15-2-1.

However, petitioners vigorously contend, and we think correctly, that it was error for the board to grant the exception without having made a finding that the use, if permitted, would not result in a traffic hazard. In *Bonitati Bros. Inc.* v. *Zoning Board of Review,* 104 R. I. 170, 242 A.2d 692, we noted that evidence of a traffic hazard is germane to an ultimate determination of whether the use, if permitted, would adversely affect the public convenience and welfare.

C.2, §1-4-3 of the ordinance provides:

"Noxious Uses Forbidden

No use of any land, building or structure of any kind within the Town of Barrington shall be permitted which causes or is likely to cause emission of unreasonable quantities of dust, smoke or noxious odors or noxious or toxid gases or which causes or is likely to cause unusual or unreasonable fire hazards and/or hazards to life or which causes any unusual or unreasonable vibration, noise *or traffic problems."* (emphasis ours)

This court has heretofore held in *Taft* v. *Zoning Board of Review,* 75 R. I. 117, 64 A.2d 200, that when a municipal legislative body adopts a zoning ordinance pursuant to the provisions of the enabling act, the intention of that body is to be gathered from a consideration of the ordinance as a whole. Thus, when a municipal legislature provides for a permitted use as a matter of right, that body declares the use permitted to be one not adverse to the public interest.

On the other hand, when said legislative body leaves the determination of whether a given use should be authorized by the board of review through the grant of a special exception, it is a condition precedent to the exercise of the board's jurisdiction that a grant of the use sought must be found by said board as not inimical to the public health, safety, morals and welfare. *Nani v. Zoning Board of Review, supra.*

Here, supported by competent evidence, the board expressly found that the use sought by applicant would not be inimical to the public interest as the same is spelled out in C.2, §1-4-3, except as to traffic hazards that the use sought might engender. As to this possibly adverse public interest, the board made no finding, although from a reading of the decision it is obvious that the board was fully cognizant that the subject land is located in the heart of an area that teems with commerce. Indeed, the decision expressly states "County Road is a heavily traveled main road through the center of Barrington."

In these circumstances then, we think that the ends of justice will best be served by remanding the cause to the respondent board for further hearing. The sole question to be determined at such hearing is whether the activities resulting from applicant's proposed use will or will not create traffic problems inimical to the public welfare. If on the basis of competent evidence the board finds that the proposed use will not result in traffic problems to such a degree that the same are contrary to the public interest, the action of the board in granting the special exception applied for is sustained. Should their finding be otherwise, then, of course, the board's grant of the relief sought will be invalid.

In furtherance of an expeditious final resolution of the circumstances peculiar to this case, we retain jurisdiction in this court to review again by way of certiorari the de-

cision of the board reached after the remand hearing, should, as a result of such decision, either of the parties to the instant proceedings claim to have been aggrieved by the board's action taken pursuant to the remand hearing.

For the limited purpose heretofore stated, the petition for certiorari is granted, and the papers in the cause are ordered returned for further proceedings in accordance with this opinion.

JOSLIN, J., did not participate.

*Raymond A. Thomas,* for petitioners.

*Graham, Reid, Ewing & Stapleton, James A. Jackson,* for respondent.