DECISION
This matter is before this Court on an appeal from a decision of the Zoning Board of Review of the Town of Foster denying Plaintiff's request for zoning relief. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
Facts and Travel
William E. Leete, II, the "Plaintiff" in this appeal, is the owner of a parcel of land located on Mount Hygeia Road in Foster and designated as Lot 7 on Assessor's Plat 17. The lot is a triangular substandard lot, with its longest side — approximately 700 feet long — fronting Mount Hygeia Road which runs north to south, and is approximately 232 feet deep at its deepest point going east to west. (See Plaintiff's application for relief at page 2, Tr. at 30). The lot, with approximately 65,000 square feet in total area, is located in an A-R (agricultural and residential) zoning district. (Id.).
Long Realty Insurance Co., Inc. of North Scituate, represented by Brian E. Carpenter, agent for Mr. Leete, filed an application for a variance and a special exception to build a house, drill a well, and install an individual sewage disposal system (ISDS), respectively, on the lot. The Foster Zoning Board of Review held a public hearing regarding Plaintiff's requested relief on April 14, 1993. Plaintiff was represented by Mr. Carpenter of Long Realty, but was not present at the hearing as he was in Southern Connecticut. Several neighboring landowners objected to the plaintiff's application on the grounds that the proposed dwelling would diminish the rural nature of the neighborhood and the leaching field would pollute abutting groundwater in the event of leaching field failure. (See Order at 2-3). The Board decided by a 5-0 vote to deny plaintiff's request for relief. Plaintiff has filed the instant appeal.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D) which provides:
 45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a Justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25).
I. The Dimensional Variance
Initially, Plaintiff contends that the Board erred in denying the relief sought because it applied the wrong burden of proof. Specifically, Plaintiff argues that the Board incorrectly applied the standard of proof required for a use or "true" variance rather than for a dimensional variance. (See Plaintiff's Memorandum at 5-8). Plaintiff argues that he wants to build a single-family dwelling in an A-R zone, a permitted use, and seeks relief from the minimum rear-yard requirements. Plaintiff further maintains that the dimensional requirements constitute a mere regulation of the permitted use, and thus qualify as a Viti
variance or a deviation. Furthermore, a regulation of a permitted use, in the form of dimensional relief, the Plaintiff argues, requires that an applicant meet the standard of proof for a deviation, and not for a use variance or "true" variance. The Plaintiff further suggests that the proper standard of proof required in such instances is proof that enforcement of the dimensional restriction would create more than mere inconvenience, and not the more difficult burden that requires the applicant to show that a literal enforcement of the ordinance would deprive him of all beneficial use of his property. (Id.
at 6).
The law clearly distinguishes between the standards of proof required for an application for a dimensional variance versus one for a use variance. It is well established that one who applies to a zoning board of review for relief from dimensional requirements must establish that enforcement of the zoning ordinance constitutes ". . . more than a mere inconvenience."Rozes v. Smith, 120 R.I. 515, 519, 388 A.2d 816 (1978). It is also well settled that an applicant seeking to deviate from dimensional requirements must show that the use of the land which he or she intends to make is permitted under the statute. Vitiv. Zoning Board of Review, 92 R.I. 59, 162 A.2d 211 (R.I. 1960).
In the instant action, the Plaintiff is permitted to make the intended use of the property, building a single-family home in an A-R zone. The Foster Zoning Ordinance describes an A-R zone as a "district . . . characterized by a mixture of low density residential and farming uses with certain light industrial uses permitted by special exception." (1991 Foster Zoning Ordinance, Article I, § 3). Although the current ordinance requires a minimum lot size of 200,000 square feet, it preserves substandard lots of record. Specifically, Article IV, § 3 provides in relevant part that:
. . . a lot [that is] smaller than the minimum dimensions and area required by this Ordinance [and] which was a lot of record on the effective date of this Ordinance may be used for a permitted use provided minimum area of 10,000 square feet and a minimum width of 100 feet.
Plaintiff's lot, as was noted at the Hearing before the Board of Review, qualifies as a substandard lot. (See Tr. at 30). It was created in 1930, before the enactment of the Foster Zoning Ordinance, and it contains 65,346 square feet, is 700' wide, and is 232' deep. However, as Plaintiff points out, even with the house centered on the lot, the following dimensional requirements cannot be met: 1) Article III, § 1 of the Foster Zoning Ordinance requires a minimum rear-yard in an A-R zone of 100' from the property line. The maximum rear year that can be obtained, given the proposed placement of the house, is 32'; 2) Article IV, § 7, which governs the regulations for sewage facilities, states that a leaching field can be no closer than 100' from a property line and 60' from a public road. The proposed leaching field is to be located 46' from the rear-yard property line and 88' from the side property line, and 40' from the public road. (See Tr. at 33; See plaintiff's application).
At the hearing, Mr. Carpenter testified that the plaintiff wished to build a single-family home nearly in the center of the triangular lot, with an ISDS to the west of the house. Several neighbors objected to the plaintiff's proposed petition on the grounds that the lot is too small to be buildable, the land is too elevated, and the rural character of the neighborhood would be undermined if the proposed dwelling were permitted. (Tr. 38-43).
The record, however, substantiates contrary findings. Specifically, the Foster Building and Zoning Inspector, Mr. Carl Saccoccio, testified that "[t]here is no other place to put this house. He has picked the best spot" on the lot on which to place the house. (Tr. at 42). The Inspector also stated that the neighboring homes on adjacent lots were situated "a good distance away from [plaintiff's] property." (Id. at 43). Indeed, it appears from the record that no neighboring houses are even visible from the plaintiff's property. Finally, although the lot tapers off at each of its three corners, it is not so aberrantly shaped so as to preclude a single-family dwelling and an attendant ISDS. Its total square footage equals approximately 1.5 acres, large enough to sustain a single-family dwelling without sacrificing the rural character of the area.
It is clear from the triangular configuration of the lot that a denial of relief will effectively prohibit the plaintiff from making a single-family use of the land, one of two permitted uses in this particular zone. The Court finds that the record is replete with competent evidence indicating that without the requested relief, the applicant would experience more than a mere inconvenience. Accordingly, the Court finds that the Board acted arbitrarily in denying said relief, and such denial was erroneous in light of the evidence of record. See Salve Regina v. ZoningBoard of Review, 594 A.2d 878 (R.I. 1991); Toohey v. Kilday,415 A.2d 732 (R.I. 1980).
II. Special Exception
The Plaintiff also petitioned the Zoning Board for a special exception in order to install an ISDS leaching field to the west of the proposed dwelling. At the hearing held on April 14, 1993, Brian Carpenter, representing the Plaintiff landowner, again presented written grounds and testimony substantiating the necessity for relief. Specifically, as noted above, the Plaintiff seeks relief from the 100' setback requirements to 46' at the rear property line, from 100' to 88' at the side line, and from 60' to 40' from the road. (Plaintiff's Memo. at 3). The Plaintiff argues that without relief he will be prohibited from installing an ISDS, and thus, from building a single-family dwelling. Moreover, the Plaintiff contends that the Foster Zoning Ordinance, which makes ISDS setback relief available only by special exception, should not apply to the Plaintiff's application since in essence Plaintiff is seeking dimensional relief for the situation of the house and ISDS. On the other hand, the Board contends that the ordinance requires special exception relief for the installation of the ISDS, and that the Plaintiff did not meet his burden in proving that the proposed use will not create a nuisance. Thus, the defendant maintains, that the special exception was properly denied. (Def. Memo at 4, 5). For the reasons set forth below, this Court finds that the Board's decision was clearly erroneous in light of the reliable, probative and substantial evidence on the record.
It is well established that an applicant seeking to obtain a special exception must satisfy the Town Ordinance's standard for such relief. Sea View Cliffs, Inc. v. Zoning Board of Review,112 R.I. 314, 309 A.2d 20 (1973). When an ordinance gives a zoning board the discretion to authorize a particular use through the grant of a special exception, the Board must preliminarily find that the use is not inimical to public health, safety, morals and welfare. Piccerelli v. Zoning Board of Review ofBarrington, 107 R.I. 221, 266 A.2d 249, 254 (1970). With respect to location, design, construction and maintenance of systems, the Department of Environmental Management ("DEM") is empowered to establish minimum standards, while individual municipalities are entitled to impose additional requirements concerning the construction of individual sewage facilities. Gara Realty, Inc.v. Zoning Board of Review of South Kingstown, 523 A.2d 855, 857 (1987).
Article IV, § 7 of the Foster Zoning Ordinance requires that an applicant seeking to install an ISDS on a substandard lot comply with the standards of a special exception. Specifically, it provides:
 the requirements of this section relating to a required distance of a sewerage disposal system from a well or property or road line may be modified by special exception under Article I. § 5.c.
Among other things, Article I. § 5.c. empowers the Board:
 2. To hear and decide special exceptions to the terms of this Ordinance, according to the provisions set forth as follows:
 A use designated as a special exception used in Article II or elsewhere in the Ordinance shall be permitted by the Board following a public hearing if such use meets the following requirements:
 a. It will be compatible with the neighboring land uses.
 b. It will not create a nuisance in the neighborhood.
 c. It will not hinder the future development of the Town.
 . . .
 Following its establishment any use which is permitted as a special exception by the Board, shall be considered as [sic] a permitted use. (article I, § 5.c., p. 4).
It is evident from the unambiguous language of these provisions that the Foster Zoning Ordinance makes the installation of an ISDS permissible by special exception. With respect to the denial of Plaintiff's application for a special exception, however, the Board of Review only cursorily stated, "Based on the evidence and findings of fact, the Board concluded that approval of this application would not fall within the intent of the Ordinancebecause of the threat to public safety." (Order at 3, emphasis added). In its memorandum, the Board contends that the Plaintiff did not present sufficient testimony regarding the placement of the driveway and whether, given the steepness of the property, such a driveway will "pose a danger either to the residents of the house, neighbors, or other people using Mount Hygeia Road." (Def. Memo. at 6).
It is well settled that in zoning cases, a zoning board should "pinpoint the specific evidence upon which [it] base[s] [its] findings." Hopf v. Board of Review of Newport,102 R.I. 275, 230 A.2d 420, 428 (1967). The law requires this minimal showing so that a reviewing court might know whether the decision rendered "bears a substantial relation to the public interest, and whether it is consistent with an exercise of reasonable discretion, or instead is an arbitrary and unreasonable exercise of the Board's power." Coderre v. Zoning Board of Review,102 R.I. 327, 230 A.2d 247, 249. (1967).
In the instant case, although the Board listed findings of fact reflecting the objectors' concerns over the proposed leaching field, there is uncontradicted evidence on the record which overwhelmingly establishes that the proposed dwelling and attendant leaching field will not be inimical to the public health, safety, welfare or morals. Specifically, Article IV, § 7 of the Foster Zoning Ordinance, governing the installation of individual sewerage systems, as noted above, requires that the applicant obtain a special exception in accordance with Article I, § 5.c., which preconditions approval of a special exception on a finding that the use ". . . be compatible with neighboring land uses, . . . not create a nuisance in the neighborhood, . . . and not hinder the future development of the Town."
In the instant case, DEM has approved the design of the ISDS to be installed. As to the design of the ISDS, DEM found that it appears to be well centered in conformity with the siting of the house in the east-center portion of the lot. The Plaintiff's agent, Brian Carpenter, plainly stated at the hearing before the Board that the driveway would be placed wherever the Department of Transportation directed. (Tr. at 44). In fact, DEM approved the ISDS plan which reads that "[t]here are no other wells within 200' of the [proposed] leaching area nor septic systems within 100' of [the proposed] well. There are no public wells existing or planned within 500' of [the proposed] leaching area." (See DEM Application and Approval). The town Building Inspector also indicated to the Board that no other water courses exist within at least 200' of the proposed septic system. (Tr. at 43). Additionally, as Plaintiff points out, the ISDS is shown to be 100' from Plaintiff's proposed well, which is the minimum distance set out by DEM, but 35' in excess of the minimum distance prescribed by the Foster Zoning Ordinance. (P1. Memo. at 8; DEM Rules and Regulations S.D. 3.05 (June 17, 1992)). The Court finds that these facts unequivocally indicate that the proposed dwelling and ISDS would not be inimical to the health and welfare of surrounding landowners or the people of Foster, thus warranting the granting of the requested relief.
After a review of the entire record, this Court finds that the Foster Zoning Board's decision to deny relief was clearly erroneous in light of the substantial, reliable and probative evidence, and as a result thereof, Plaintiff's rights have been prejudiced. Accordingly, the April 14, 1993 Foster Zoning Board's decision is hereby reversed.
Counsel shall submit appropriate order for entry.