DECISION
This action is an appeal from a decision of the Zoning Board of Review of the City of Warwick (the "Board"). William DeAngelus (the "plaintiff") seeks reversal of a decision of the Board which granted a special use permit to defendant Pioneer Development Co. ("Pioneer") for the construction of a hotel on property owned by defendant Kenney Manufacturing Company ("Kenney"). This Court has jurisdiction of the action pursuant to R.I. Gen. Laws §45-24-69 (1956).
 Facts/Travel
Defendant Kenney Manufacturing Company owns real property located on Jefferson Boulevard in Warwick, designated as lot 14 on Assessor's Plat 277 (the "Property"). Defendant Pioneer, the buyer and developer of the Property, seeks to construct a four story, 150 room, 80,000 square foot hotel on the Property. As the Property is located within a general industrial zone, a special use permit is required for construction of the hotel. On June 2, 1997, defendant Pioneer applied to the Board for a special use permit.
On August 28, 1997, the Board held a hearing on Pioneer's application. At the hearing, Edward Riley of Pioneer testified about the overall construction plans for the hotel. He noted that the restaurant proposed for the hotel would not contain a full lounge or waitress service. Sam Hemenway, an engineer at Garofalo and Associates who performed engineering work at the site, testified as to design features of the project which would harmonize the development with the surrounding area. Mr. Hemenway testified that substantial tree cover (forty to sixty feet in height) would screen the rear parking area. (Tr. at 13). Mr. Hemenway mentioned that the project was developed with input from the Warwick Planning Department to ensure that the hotel would fit in with its surroundings on Jefferson Boulevard. (Tr. at 12-15). Mr. Hemenway lastly testified that the project complied with all zoning requirements and DEM drainage regulations.
Next, Stephen Garofalo, an engineer with Garofalo and Associates, testified as to a traffic impact analysis he performed for Pioneer regarding the roadways near the site of the proposed hotel. In its study, Garofalo and Associates gathered traffic data between June 3, 1996 and June 10, 1997. (Petitioner's Exhibit 3). The appendix in Garofalo and Associates' report contains specific automobile counts for June 2, 1997. (Petitioner's Exhibit 3). Mr. Garofalo identified the "level of service" (LOS) for three intersections near the site. He explained that "[l]evel of service is an indicator of the efficiency of the intersection in terms of its ability to handle traffic." (Tr. at 25). LOS is measured on a six-level scale of A through F, with "A" involving traffic delay of less than 5 seconds per vehicle and "F" involving traffic delay in excess of 60 seconds per vehicle. (Petitioner's Exhibit 3). Mr. Garofalo testified that the LOS would remain at its present grade of "C" after the hotel is constructed. (Tr. at 28). Mr. Garofalo stated that an LOS grade of "C" is acceptable for the arterial roads ear the hotel and that the hotel development would not increase traffic congestion. (Tr. at 28). Mr. Garofalo's analysis of the traffic impact in the area took into account his experience on another project in the area which required a similar traffic analysis approximately one year prior to the traffic study conducted for Pioneer. (Tr. at 44).
Finally, James Sloan, a real estate expert, testified on behalf of Pioneer. He opined that the hotel would be harmonious with other commercial and industrial developments within the area. (Tr. at 34-35). Mr. Sloan noted that the growth of commercial facilities along the airport connector road demonstrates the conformity of the proposed hotel with the character of the surrounding area, as the hotel site is near the intersection of Jefferson Boulevard and the Airport Connector Road. (Tr. at 34-35). Mr. Sloan further testified that the hotel project conformed to the Comprehensive Plan's goal of providing an adequate number of hotel rooms for the area adjacent to T.F. Green Airport. (Tr. at 37).
Plaintiff William DeAngelus objected to Pioneer's application at the hearing. Mr. DeAngelus lives in a condominium complex containing nearly 400 units known as Wethersfield Commons located at 372 Chatham Circle, about 400 feet away from the proposed hotel. No abutters, other property owners at Wethersfield Commons or anyone else objected to Pioneer's application. Plaintiff DeAngelus presented three expert witnesses in support of his objection. Paul Cunningham testified that the proposed hotel would alter the character of the neighborhood as it constitutes a much more "intensive" use that is not intended by the Comprehensive Plan. (Tr. at 48). In Mr. Cunningham's expert opinion, the hotel would have an adverse effect on nearby residential property values, including the condominiums at Wethersfield Commons. (Tr. at 47). Scott Moorehead, an engineer, testified as to the impact on traffic from the proposed hotel. Mr. Moorehead's analysis determined that the proposed hotel would "lead to some congestion at the proposed site entrance. . . ." (Tr. at 55). Mr. Moorehead also stated that the new hotel would have a negative impact on people seeking to enter or exit Wethersfield Commons. (Tr. at 55).
Peter Ruggiero also testified on behalf of the plaintiff regarding the proposal's conformance with the Comprehensive Plan. He noted that the Comprehensive Plan discourages any type of nonindustrial use for areas zoned industrial. (Tr. at 59). Mr. Ruggiero found that the amount of land used for the hotel would involve about 20% of the total land (53 acres) zoned for general industrial use city-wide. (Tr. at 60). Mr. Ruggiero did concede, however, that the immediate area for the hotel comprised only 3.2 acres. (Tr. at 62). The hotel site itself would therefore comprise less than 10% of the land zoned for general industrial use and less than 5% of the total industrial zoned land (144 acres). (Tr. at 60).
After hearing all of this testimony and evidence, the Board voted, four members to one, to approve Pioneer's application for a special use permit. On October 24, 1997, the Board filed a written decision containing findings of fact and conclusions of law, which granted Pioneer's application.
In granting the application, the Board accepted the testimony of Mr. Garofalo and Mr. Sloan that the proposed hotel would not increase traffic congestion and would exist in harmony with the surrounding area (Decision of the Board dated October 24, 1997). The Board concluded that the proposed hotel development complied with all zoning ordinance provisions. The Board further concluded that the development "would not alter the general character of the surrounding area nor impair the intent or purpose of said ordinance or the city's comprehensive plan because the area consists of more intense commercial operations than the proposed hotel operation as testified to by the traffic and real estate experts presented by the petitioner." (Decision of the Board dated October 24, 1997). Plaintiff DeAngelus filed a timely appeal of the Board's decision.
On appeal, the plaintiff attacks the validity of the Board's decision. He argues that the purported written decision of the Board is invalid because it was never approved by a vote of the Board. The plaintiff also argues that the Board's decision to grant the special use permit is invalid because the Board made no findings of fact prior to voting on its approval of Pioneer's application. Finally, the plaintiff argues that the Board's decision is contrary to the substantial evidence of record.
 Standard of Review
Superior Court review of a zoning board decision is controlled by the following statute:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 45-24-69(D).
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n. Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters. AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Findings and Vote of the Board
Plaintiff DeAngelus contends that the Board's written decision, dated October 24, 1998, is a nullity because it was not voted on by the Board and was not timely filed. He asks this Court to ignore that decision, which contains detailed findings of fact and conclusions of law so often lacking in zoning board decisions, and confine its review to the Board's vote of August 28, 1997 approving Pioneer's application. As that vote reflects a decision to grant Pioneer's application but no findings were made prior to the vote (other than perhaps, at most, the statement of one Board member as to his rationale for approving the application), plaintiff contends that there are insufficient findings for judicial review and the matter must be remanded to the Board for the making of such findings.
Defendants Pioneer and Kenney respond that the recorded vote of each member of the Board at the hearing, read in conjunction with the subsequent written decision, demonstrates the Board's approval of the written decision. They argue that the final written decision of the Board contains adequate findings essential to judicial review.
Rhode Island law provides that:
 the zoning board of review shall render a decision within a reasonable period of time. The zoning board of review shall include in its decision all findings of fact and conditions, showing the vote of each member participating thereon, and the absence of a member or his or her failure to vote. Decisions shall be recorded and filed in the office of the zoning board of review within thirty (30) working days from the date when the decision was rendered. . . .
R.I. Gen. Laws § 45-24-61 (a). The Warwick Zoning Ordinance matches the above requirements, except that it requires the rendering of a decision within 20 days after a public hearing. Warwick Zoning Ordinance § 903.5. Rhode Island law provides further that "[a]n aggrieved party may appeal a decision of the zoning board of review to the superior court . . . within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk." R.I. Gen. Laws § 45-24-69.
Clearly under R.I. Gen. Laws § 45-24-69, an aggrieved party may not appeal a zoning board's decision until after the written decision has been posted. The Board's decision, therefore, is not final until it is embodied in a written decision. The final written decision must contain findings of fact. Irish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986). A simple stenographic transcript of the Board's action is not sufficient. See Bellevue Shopping Center Assoc. v. Chase,556 A.2d 45, 46 (R.I. 1989).
On several occasions, our Supreme Court has stated that written findings of fact formulated in consultation with legal counsel is the preferred method for crafting a decision of the Board. See May-Day Realty Corporation v. Board of Appeals,107 R.I. 235, 267 A.2d 400, 402-403 (1970) ("customarily zoning boards incorporate their factual determinations and the legal principles upon which they rely in a written decision . . . it is common practice for administrative bodies to request counsel to submit proposed findings of fact and conclusions of law and to seek the assistance of their legal advisers in the decision writing process."); Souza v. Zoning Board of Review of Town ofWarren, 104 R.I. 697, 248 A.2d 325, 327 (1968) ("It might be appropriate to suggest again that, because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal services of their municipal legal departments" to improve their written decisions); Coderrev. Zoning Board of Pawtucket, 102 R.I. 327, 230 A.2d 247, 250 (1967) ("we recognize that board members are without legal training or experience in decision writing. That recognition has prompted us during oral arguments in zoning cases to suggest to city and town solicitors that they offer their assistance to their respective boards in the decision writing process.") The court in Coderre went on to advise zoning boards that "it is within their prerogative to request counsel who appear before them to submit suggested findings of fact and conclusions of law. Perhaps if these suggestions are followed, the Robinson standards will more frequently be satisfied and the case will be infrequent where a remand to a board for clarification and completion of a decision is necessary." Id.
These decisions make clear that a zoning board is not required to make findings at the hearing stage. In fact, our Supreme Court has evidenced a preference for inclusion of findings of fact and conclusions of law in a subsequent written decision, after due consultation with legal advisors. Such findings of the Board provide the requisite foundation for meaningful judicial review of the Board's decision.
In this case, the Board followed these precepts articulated by the Rhode Island Supreme Court. It voted orally to grant Pioneer's application and then presumably directed counsel to prepare a written document memorializing that decision. The written document contains the rationale for the decision in the form of findings of fact and conclusions of law.
Admittedly, the formal written decision and the findings stated therein were not again voted upon by the Board with the vote of each board member recorded thereon. While arguably it might have been preferable for the Board either to hold its vote on the application pending presentation to it of a written decision containing findings of fact and conclusions of law or to vote again to ratify the final written decision, its failure to do so in this instance does not warrant a remand to the Board.
This Court has no question that the written decision dated October 24, 1997 is a decision of the Board. It is entitled "Decision of the Board," it was filed as a decision of the Board in the zoning office on October 24, 1997, and it was certified as a decision of the Board as part of the record on appeal to this Court. Although the Board voted on Pioneer's application at the August 28, 1997 hearing, under settled Rhode Island law, that vote could not reflect the final decision of the Board until written and posted on October 24, 1997.
A decision of the Board, by definition, means that it is reflective of the opinion of a majority of the members of the Board. As such, that written decision binds the Board, enables the parties to take action in reliance upon it and gives rise to appellate rights for any party aggrieved by it.
Moreover, it is implicit in the Board's written decision that the members of the Board voted on the decision. Indeed, in the body of the written decision, it explicitly characterizes the document as "the decision that was made [and voted on] by the Board on August 27, 1997." The stenographic transcript of the hearing of August 28, 1997, read in conjunction with the written decision of October 24, 1997, confirms that the Board's decision on Pioneer's application was voted on by the individual Board members. Surely if the Board — a named defendant in this action — was of a contrary view, it would have asserted that position in this litigation.
Once the written decision of October 24, 1997 is accepted as a valid and binding decision of the Board, there can be no dispute that the decision contains the requisite findings of fact and conclusions of law so essential for judicial review. In examining the Board's written decision, this Court finds that it readily complies with the minimum standards outlined in IrishPartnership. Our Supreme Court has said:
 The issue here, however, is not one of form, but the content of the decision; and what [the court] must decide is whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements.
Irish Partnership, 518 A.2d at 358-359 (quoting May-Day RealtyCorp., 267 A.2d at 403). "Where a board of review acts affirmatively upon an application for an exception the granting of which is conditioned upon the finding of ultimate facts prescribed in the ordinance, we will hold, in the absence of an express finding thereon, that there is an implicit finding in the decision of these prerequisite facts when the state of evidence is such as would warrant the making of such finding by the board." Cugini v. Chiaradio, 96 R.I. 120, 189 A.2d 798, 802 (1963).
Here, the Board resolved the conflicting expert testimony by accepting the testimony of Pioneer's experts. The Board considered the testimony, factual circumstances of the case, and evidence and applied to it the appropriate legal standard for granting a special use permit. A remand of the instant case is not appropriate, as a remand would not serve to clarify any issues. See Roger Williams College v. Gallison, 572 A.2d 61, 63 (R.I. 1990). This Court will not subject the parties to the needless delay and inconvenience associated with a remand where the court is able to satisfy itself "from the record that the board's decision was either correct or erroneous. . . ." Richardsv. Zoning Board of Review, 100 R.I. 212, 213 A.2d 814, 818 (1965). In addition, any delay on the Board's part in issuing its written decision cannot serve as grounds for reversal or remand, as the plaintiff has not demonstrated any prejudice from such delay. Piccerelli v. Zoning Board of Review of Barrington,107 R.I. 221, 266 A.2d 249, 253 (1970). Mindful of Irish Partnership,
this Court will not elevate form over substance, here finding the content of the Board's decision is clearly susceptible to judicial review.
 Special Use Permit Standard
The plaintiff further argues that the Board's decision was clearly erroneous because the evidence of record demonstrates that the construction of a hotel would alter the general character of the surrounding area. The plaintiff argues that the finding that the impact on traffic from the proposed project would not alter the general character of the surrounding area nor impair the intent or purpose of the zoning ordinance is arbitrary, capricious and clearly erroneous in light of the substantial evidence in the whole record. According to the plaintiff, Mr. Moorehead's traffic analysis was superior to Mr. Garofalo's analysis in demonstrating a significant increase in traffic, that would result from construction of the hotel. The plaintiff notes that Mr. Garofalo did not present data on three intersections; therefore, the Board did not have enough evidence to conclude that the increased traffic would not alter the surrounding area. The plaintiff also notes that Mr. Garofalo did not give an opinion on the safety impact of the traffic. In addition, the plaintiff argues that the finding that the impact on Wethersfield Commons from the proposed project would not alter the general character of the surrounding area nor impair the intent or purpose of the zoning ordinance is arbitrary, capricious, and clearly erroneous in light of the substantial evidence in the whole record. The plaintiff argues that the Board erred in discounting Mr. Cunningham's testimony that real property values would depreciate from construction of the hotel, especially in light of the failure of Pioneer's real estate expert, Mr. Sloan, to comment on the hotel's effect on real property values for Wethersfield Commons. Finally, the plaintiff argues that the finding that the location of the proposed hotel in the General Industrial zone would not impair the intent or purpose of the city's Comprehensive Plan is arbitrary, capricious and clearly erroneous in light of the substantial evidence in the whole record. The plaintiff argues that construction of the hotel would alter the surrounding area in violation of the Comprehensive Plan by allowing for a non-industrial use in an area otherwise reserved for industrial use.
The defendants argue, in response, that the Board had substantial evidence of record before it to support its grant of the special use permit. Mr. Sloan, for example, took an inventory of the surrounding area and found that the hotel would be harmonious with other commercial uses in the area. Mr. Garofalo also testified that the hotel would not increase traffic congestion. The defendants argue, therefore, that any increase in traffic would not alter the surrounding area.
A zoning ordinance which provides for the issuance of special use permits must "[e]stablish criteria for the issuance of each category of special use permit, that shall be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the city or town. . . ." R.I. Gen. Laws §45-24-42(3). In granting a special use permit, the Warwick Zoning Ordinance requires evidence in the record:
 (1) that the special use is specifically authorized by this Ordinance, and setting forth the exact subsection of this Ordinance, containing the jurisdictional authorization;
 (2) that the special use meets all of the criteria set forth in the subsection of this Ordinance authorizing such special use; and
 (3) that the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of the Ordinance or the Comprehensive Plan of the City." Warwick Zoning Ordinance.
Section 906.3(c). The Warwick Zoning Ordinance seeks to "[p]romote the public health, safety, and general welfare of the city." Warwick Zoning Ordinance § 103.1. An applicant must show, therefore, that "neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals." Toohey v. Kilday, 415 A.2d 732, 736 (R.I. 1980) (citing Hester v. Timothy, 108 R.I. 376, 385-386,275 A.2d 637, 642 (1971)).
The Board had before it substantial evidence to find that the proposed hotel would not alter the character of the surrounding area. The Board chose to accept Pioneer's expert testimony (Mr. Garofalo and Mr. Sloan) over the plaintiffs expert testimony. Mr. Garofalo's testimony and report confirmed that increased traffic would not alter the character of the area. As alluded to previously, Mr. Sloan testified that the hotel would exist in harmony with the surrounding area, which included a mixture of commercial and industrial uses. "The board has expressly found that the proposed use would not substantially or permanently injure the appropriate use of neighboring property. There is evidence in the record to sustain such finding. It is true that the evidence on this issue is in conflict. But it is well settled that on [appeal] this court does not ordinarily weigh evidence."Budlong v. Zoning Board of Review of City of Cranston,93 R.I. 199, 172 A.2d 590, 593-594 (1961). See also Mendonsa v. Corey,495 A.2d 257, 263 (R.I. 1985) ("In such circumstances, we believe that the board, who had before it the individual witnesses and had the opportunity to judge their credibility, was in a better position than the court to resolve the conflict."); BellevueShopping Center Assoc. v. Chase, 574 A.2d 760, 764 (R.I. 1990) ("Although conflicting testimony was presented at the hearings, the board is vested with discretion to accept or reject the evidence presented.")
The plaintiff, in defining what constitutes the "surrounding area," has attempted to limit the area to the hotel's General Industrial zone. The plaintiff notes that within the hotel's zone, mostly industrial uses exist. Yet our Supreme Court has stated that the proliferation of one type of use in a zone is not dispositive of the character of a neighborhood. Pascalides v.Zoning Board of Review of City of Cranston, 97 R.I. 364,197 A.2d 747, 751 (1964). In examining a zoning ordinance requiring a special use to be in harmony with the area, the Supreme Court said, "The evidence is clear that the proposed apartment building would be in harmony with the character of the neighborhood. That character is determined largely by the nature of the uses permitted in the district . . . [t]hat the present development is substantially or even predominantly one-family residences is of no consequence so long as the ordinance permits other uses." Id.
An examination of the Warwick Zoning Ordinance reveals that many other commercial operations are allowed by special use permit within a General Industrial zone. On this basis, the proposed hotel would not alter the character of the surrounding area. In addition, this Court finds that the surrounding area also can include buildings which are outside the site's General Industrial zone. The close proximity of structures certainly can place them within the same neighborhood as the hotel, even if they do not exist in the same zone. Expert testimony can define the harmonious contours of this neighborhood area, as recognized in Budlong, supra. Mr. Sloan provided ample testimony, therefore, that the proposed hotel would be in harmony with the surrounding area.
In finding that the proposed hotel would not alter the general character of the surrounding area, the Board is deemed to have implicitly considered the effect of the proposed use on the public health, safety, and welfare and found no impact. SeeGardiner v. Zoning Board of Review, 101 R.I. 681, 226 A.2d 698, 702 (1967). In fact, the Board's decision contains strong inferences that the Board considered and rejected any argument that the proposed special use would be detrimental to public safety or the general public welfare. The Board specifically accepted the expert testimony of Mr. Garofalo that the proposed hotel would not increase traffic congestion in the area. Mr. Garofalo premised his analysis on traffic data taken in the area and his experience on another traffic study project for the area. This evidence indicates that public safety would not suffer negatively from the proposed hotel. "A mere increase in traffic at the site of a proposed use is not a valid zoning criterion when neither a consequent intensification of traffic congestion or hazard at the location accompanies it." Toohey. 415 A.2d at 737.
As noted previously, the Board also accepted the expert testimony of Mr. Sloan that the proposed hotel would exist in harmony with the surrounding area. A valid inference from this evidence is that the general welfare of the area would not be harmed from the introduction of the hotel. Mr. Sloan also testified that other commercial operations existed in the surrounding area. This evidence indicates that the hotel would not alter the character of the area such that area properties would not suffer depreciation in property values. Mr. Sloan stated, "I cannot see how there would be an altering or adverse effect, or a diminution of value caused to the surrounding properties." (Tr. at 35). As in Gardiner, supra, "the decision of the board, when read in connection with information in the [record] . . . shows that, in its judgment, the granting of the [special use permit] . . . was not unduly in conflict with the public interest as expressed in the ordinance." Gardiner, 226
A.2d at 702.
The Board also found that the proposed hotel would not contravene the Comprehensive Plan. The Comprehensive Plangenerally prohibits non-industrial uses along Jefferson Boulevard, but does not conclusively prohibit non-industrial uses in all instances. Mr. Sloan testified that the Comprehensive Plan also calls for adequate hotel space to serve the nearby airport. The proposed hotel obviously would service the expanding airport and would use less than 10% of the land zoned for general industrial use. (Tr. at 62). As a result, the Board was correct in finding that the hotel would not impair the plan. This finding of the Board is bolstered by the fact that the Comprehensive Plan does not prevent the introduction of all non-industrial uses along Jefferson Boulevard. The fact that the hotel is located ear the Jefferson Boulevard-Airport Connector Road intersection demonstrates the role the hotel can play in serving patrons of the nearby airport, as called for by the Comprehensive Plan.
 Conclusion
After review of the entire record, this Court finds that the Board's decision was not in violation of constitutional or statutory provisions, was not in excess of the Board's statutory authority, was made upon lawful procedure and was not clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. The Board's actions were not arbitrary or capricious or characterized by an abuse of discretion and not affected by other error of law. Substantial rights of the plaintiff have not been prejudiced by the Board's decision to grant a special use permit to defendant Pioneer. Accordingly, the plaintiff's appeal is denied, and the decision of the Board is hereby affirmed.
Counsel shall agree upon an appropriate form of judgment, reflective of this decision, and submit it to the Court forthwith for entry.