390 A.2d 378 (1978)
V. S. H. REALTY, INC.
v.
ZONING BOARD OF REVIEW OF the TOWN OF EAST GREENWICH.
No. 76-358-M.P.
Supreme Court of Rhode Island.
August 21, 1978.
*379 Patrarca & McGair, Louis A. Petrarca, Jr., Joseph J. McGair, Warwick, for petitioner.
A. Earl Shaw, Jr., Town Sol., East Greenwich, for respondent.

OPINION
BEVILACQUA, Chief Justice.
This is a certiorari proceeding in which we are asked to review a Superior Court judgment affirming the denial of the petitioner's application to the respondent, the Zoning Board of Review for the Town of East Greenwich, seeking a special exception to construct a gas station in a commercial downtown (CD) zone and also requesting three deviations from various setback requirements.
The petitioner, V.S.H. Realty, Inc., owns a lot zoned CD in the town of East Greenwich. The lot is located at the northeasterly corner of the intersection of London Street and Main Street, with 115.04 feet of frontage on the former, 95.61 feet of frontage on the latter, and a total area of approximately 9,041 feet. At present it contains a vacant building formerly used as a gas station.
The petitioner wants to build a Cumberland Farms retail food store and a self-service gas station on the lot. To do so it proposes to demolish the existing structure, take out the old gas storage tanks and replace them with new tanks, and install a pumping apparatus at a canopy-covered island to be built at the front of the property. At the rear of the property petitioner plans to construct a new masonry building to house the food store. The southwesterly corner of this building would be 5 feet from the London Street lot line, while the easterly wall would be built atop an existing retaining wall right on that property line. The wall demarcates a lot which contains the Rhode Island Museum of Transportation. The westerly side of the canopy over the gas pumps would border the westerly lot line, which abuts Main Street. A small parking area is proposed to separate the gas station and the store. Traffic would only enter the site at the front portion of the lot.
*380 Various zoning problems arose concerning this suggested configuration. The East Greenwich ordinance requires 10-foot setbacks on all sides of the planned buildings. Also, while the use of the property as a food store is permitted under the zoning regulations, article II, section 6 of the ordinance stipulates that a gas station is not a permitted use in a CD zone and can only be located there by way of special exception.
To surmount these problems, petitioner filed an application for an exception or variation under the zoning ordinance with respondent. This application was withdrawn. A new application was filed on December 18, 1973, requesting a special exception to allow the construction of the gas station and also asking for relief from the aforesaid setback regulations.
A public hearing was held concerning the application. Conflicting testimony and evidence was submitted. The petitioner's witnesses testified that the contemplated dual use would not pose any traffic problems for the area. They testified that the value of adjoining property would not diminish, and that the safety, health, and welfare of the public would be preserved.
Richard Whitaker, who owned the residential property at the rear of petitioner's parcel, testified that the construction of the food store atop the retaining wall that separates petitioner's and Whitaker's lots would interfere with the lighting that his building, the museum, receives and would block his view of Main Street. There was further testimony that if two or three cars were waiting for service at the gas station, the sidewalks next to the pumping area would become blocked, pedestrians would be forced to walk in the street, access to the food store would be denied, and traffic would be adversely affected in proportion to the length of the line.
A letter from the town's Director of Public Works, John Cook, was introduced. In the letter Cook recommended that petitioner's application be denied because the lot in question was large enough for only one discrete business, not two, and because the combination of the two uses would introduce traffic problems, particularly with the gas pumps located at the front of the property. Other evidence indicated that a safety hazard threatened pedestrians whenever a customer on the Main Street side of the pump island opened a car door because the door would swing out onto the sidewalk.
In denying petitioner's application for a special exception, respondent stressed that only 2,280 square feet had been designated for the gas station, whereas the zoning ordinance required a minimum of 5,000 square feet for a commerical use in a CD zone. The respondent felt that this fact negated petitioner's argument that the proposed use as a gas station would serve public convenience and welfare and that neighboring property would not be harmed if the exception were granted. As to the three requests for relief from setback regulations, respondent treated them as requests for variances and concluded that petitioner had failed to prove that relief would not be contrary to the public interest and that a literal enforcement of the setback regulations would result in unnecessary hardship. The respondent emphasized the potential traffic hazards, which in its opinion would aggravate existing traffic problems in the area. Additionally, respondent rejected petitioner's argument that special conditions of the lot, such as the 12-foot height differential between it and the abutting lot at its easterly lot line, rendered part of the lot unusable unless the setback relief was granted. The respondent noted that the lot was perfectly usable as either a gas station or a food store, and that the need for relief arose only when petitioner sought to combine those two uses. Finally, respondent noted that its denial did not deprive petitioner of full and beneficial enjoyment of its land because there were many ways in which the lot could be used.
The petitioner appealed the decision of respondent to the Superior Court under G.L.1956 (1970 Reenactment) § 45-24-20. The trial justice denied the appeal because he found ample evidence in the record to support respondent's decision. The matter is now before us on certiorari. The petitioner *381 raises two issues for review. First, whether respondent erred by misapplying the standard enunciated in Nani v. Zoning Board of Review, 104 R.I. 150, 242 A.2d 403 (1968), for evaluating applications for special exceptions. Second, whether respondent erred in applying variance standards in evaluating petitioner's request for relief from lot line regulations, since, petitioner contends, such relief is in the form of a deviation, not a variance.

I
As we mentioned earlier, the use of a CD-zoned lot as a gas station is permitted only by special exception under the East Greenwich Zoning Ordinance, article II, section 6. Under article VIII, section 1 of that ordinance, the burden is on the applicant to prove to the zoning board that the "public convenience and welfare will be served and that the appropriate use of neighboring property will not be substantially or permanently injured if the exception is granted." In Nani v. Zoning Board of Review, supra, which involved permission to use a commercial zone for a gas station, we held that the "public convenience and welfare" standard that must be met as a precondition to the grant of a special exception is satisfied by a showing that the proposed use will not result in conditions "inimical to the public health, safety, morals and welfare." Id. at 156, 242 A.2d at 406.
After Nani, we have interpreted zoning ordinances that bear the "public convenience and welfare" standard as requiring that an applicant for a special exception must introduce competent evidence that "neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals." Hester v. Timothy, 108 R.I. 376, 385-86, 275 A.2d 637, 641-42 (1971) (emphasis in original).
The petitioner urges that respondent applied the pre-Nani "public convenience and welfare" standard to the application for a special exception, not the post-Nani "inimical to public health, safety, morals and welfare" standard. While it is true that respondent did phrase its decision in terms of the pre-Nani standard, it is apparent from a review of the record that they evaluated the evidence in light of the post-Nani, public-interest standard. We also believe that there is sufficient evidence in the record to establish that the special exception sought by petitioner for use of the lot as a gas station would cause traffic problems and would violate the public interest as expressed in the ordinance requiring 5,000 square feet of property for a commercial use in CD zone.[1] In Nani v. Zoning Board of Review, supra, we held that traffic congestion was contrary to public welfare.
Thus even though respondent framed its decision in terms of the "public convenience and welfare" standard, its decision makes sufficient factual determinations and contains sufficient reasons why relief was denied to allow us to conclude that there was competent evidence before the board to show that the proposed use would not serve the public convenience and welfare because it would result in conditions inimical to the "public health, safety, morals and welfare." We conclude, therefore, that the trial justice did not err in affirming the denial of petitioner's request for a special exception.

II
Relief from lot line regulations, such as setbacks, may be granted as a deviation, an exception, or a variance. Sun Oil Co. v. Zoning Board of Review, 105 R.I. 231, 251 A.2d 167 (1969). The petitioner argues that its requests for relief from lot line regulations were for deviations, not for variances, and that therefore respondent should have applied the deviation standard in reviewing the application. The deviation standard was set out in Viti v. Zoning Board of Review, 92 R.I. 59, 166 A.2d 211 (1960) and articulated in Lincoln Plastic Products Co. v. Zoning Board of Review, 104 R.I. 111, 242 *382 A.2d 301 (1968), where we stated that an applicant for a deviation from lot line regulations must show that relief is necessary for the enjoyment of the permitted use sought to be served. The emphasized phrase "permitted use" is petitioner's nemesis.
We agree with petitioner that a variance is a form of relief from restrictions on the use of land, while a deviation is a form of relief from an ordinance which regulates the manner in which a permitted use may be implemented. See Westminster Corp. v. Zoning Board of Review, 103 R.I. 381, 238 A.2d 353 (1968). We also agree that under the Viti rule, an applicant for a deviation need not show that a literal enforcement of the regulation would deprive him of all beneficial use of his land, which is the standard applied by respondent in denying petitioner three requests for deviations. However, the Viti rule only applies where the relief sought is for a permitted use, never where the applicant seeks both a deviation and a special exception, as petitioner does in the instant case. Sun Oil Co. v. Zoning Board of Review, 105 R.I. 231, 251 A.2d 167 (1969). Thus the Viti rule does not apply here.
The petitioner also argues that a conditionally permitted use, which is a euphemism for a use permitted by means of special exception, is synonymous with the phrase "permitted use" for purposes of application of the Viti rule. We rejected this identical argument in Lindberg's Inc. v. Zoning Board of Review, 106 R.I. 667, 262 A.2d 628 (1970), and we see no reason not to do so here.
We conclude, therefore, that the petitioner was not entitled to have its application for deviations evaluated under the Viti rule.
The petition for certiorari is denied and dismissed, the writ previously issued is quashed, and the record certified to us is ordered returned to the Superior Court with our decision endorsed thereon.
NOTES
[1] As we pointed out, only 2,280 square feet were allotted for the gas station.