DECISION
This matter is before the Court on timely appeal from a decision of the City of Woonsocket Zoning Board of Review (hereinafter Board) denying Petitioner's request for zoning relief. Jurisdiction in this Court is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
Facts and Procedure History
Petitioner Mt. St. Francis Health Center Associates, d/b/a Mt. St. Francis: Health Center (Health Center) seeks a reversal of the Board's May 23, 1994 decision issued after hearings on May 9, 1994 and May 23, 1994 which denied the Health Center's application under the Woonsocket Zoning Ordinance (Ordinance) for a special use permit and dimensional variance to allow expansion of the use of the Health Center's property. The subject property is located at 4 [Saint] Joseph Street, Woonsocket, Rhode Island and designated on Assessor's Plat 23A as Lot number 060. Said lot, containing 109,500 square feet with frontage of 300 feet and depth of 393 feet, is zoned residential, R-4. The building currently on the lot is 70,923 square feet. The site's present use is a skilled care nursing home, and the stated proposed use is the same. The proposed alterations are: (1) the addition of a floor to allow an additional sixty-two (62) beds (22,000 square feet), (2) an addition to the dining area to better serve existing residents (1000 square feet), (3) a restructure of the parking area and traffic flow with a buffer added, (4) addition of sixty-two (62) residents to the one hundred ninety-eight (198) current maximum census. (Tr. of 5/9/94 at 2; Application of 4/5/94 at 2). The Health Center seeks a dimensional deviation to increase the height of the building beyond the allowed fifty (50) feet limit to fifty-five (55) feet, a five foot height deviation under § 6.243 and pursuant to § 11.33, a special use permit allowing the proposed expansion of the nursing home under § 5.4.[1] (Tr. of 5/9/94 at 5; Application of 4/5/94 at 3).
In 1975, by previous grant of a special use permit, the Board conditioned the use of the site as a skilled care nursing home by limiting the number of Health Center beds to one hundred ninety-nine (199). In 1988, the Health Center sought and received from the Board an additional special use permit solely to increase the number of beds to 260. This special use permit was conditioned upon a one-year limitation for implementation. The permit expired before the Health Center obtained a Certificate of Need (certificate) from the Department of Health. The Health Center subsequently obtained a valid certificate in February 1992. Thereafter, the Health Center was granted a substantial change of circumstances waiver from the Board allowing a repetitive petition. The Board then twice denied the Health Center's modified proposals. The Health Center's subsequent efforts to have the city council alter the ordinance to allow a nursing home as a permitted use in an R-4 district were defeated. Consequently, the Health Center submitted the subject application seeking the Board's review of the proposed improvements "as a whole package." (Tr. of 5/9/94 at 9, 11).
Numerous witnesses testified on behalf of the Health Center's application for its proposed expansion at the May 5, 1994 hearing. Kathy Judge (Judge), the Health Center's Operations Administrator, detailed the serious inadequacy of the present facility's dining, recreation, and parking areas. Kathleen Shatraw (Shatraw), the Health Center's Director of Social Services, testified regarding the anticipated benefits which would result from the proposed expansion. (Tr. of 5/9/94 at 35, 39, 42). Al Mancino, qualified by the Board as an expert architect witness, detailed the proposed improvements extensively indicating each structural improvement and proposed materials. (Tr. of 5/9/94 at 44-47, 49).
Wilfrid L. Gates (Gates), an expert planner and landscape architect witness, testified regarding the creation of a one-way traffic circulation pattern and improvements to the Center's parking area, including an increase in the number of visitor parking spaces and additional employee parking slots. (Tr. of 5/9/94 at 55-60, 67). Michael Desmond (Desmond), a professional engineer, testified regarding the Health Center's site plan for conformity to accepted traffic engineering standards and determined that motor vehicles could safely negotiate the proposed site. (Tr. of 5/9/94 at 77-78). Desmond further testified that the proposed plan would result in a reduction in previous noncompliance and a net gain of parking spaces. (Tr. of 5/9/94 at 79-84).
Finally, at the May 9th hearing, J. Clifden O'Reilly testified to the harmonious balance between the Health Center's proposal and the Ordinance. He specifically testified that the height relief requested by the Health center would not be contrary to any public interest, that the proposal benefits the neighborhood, and that it would not adversely impact upon neighborhood property values.(Tr. of 5/9/94 at 111-16). The hearing was continued by the Board to May 23, 1994.
At the May 23, 1994 hearing additional testimony was taken. Counsel for the Health Center indicated that the Health Center had agreed to incorporate in its plans the several modifications thereto required by Captain Eldridge of the Woonsocket Fire Department. Roberta Hawkins, Executive Director of the Alliance for better Nursing Home Care, who represented the interests of the Health Center's residents, also spoke in favor of the application. (Tr. of 5/23/94 at 26-31).
Four witnesses spoke in opposition to the Health center's proposal raising concerns, inter alia, about increased traffic congestion, drainage of snow meltdown onto neighboring properties, and the alleged combustibility of the materials proposed from the building's exterior. (Tr. of 5/23/94 at 37-38, 51, 61-63, 66-70). Additionally, the chairperson read into the record a letter to the Board by Joel D. Mathews, Director of the Department of Planning and Development for the City of Woonsocket. Based on the history of the building and the project to date, specifically the special use approved in 1975, Mr. Mathews questioned the Health Center's ability to show hardship as a basis for consideration of the subject application. (Tr. of 5/9/94 at 73-77).
The Board voted unanimously to deny the subject application. (Tr. of 5/23/94 at 93). In its written minutes of the May 23, 1994 meeting regarding the Health Center's application, the Board stated,
 ". . . Reason for Denial/Findings of Fact:
 1. Reduction in current green acres track;
 2. Site is limited in terms of its original design;
 3. Approval will have an adverse effect on abutting properties, as well as people traversing the area in general;
 4. Requested amenities do not require additional sixty-two (62) beds;
 5. Insufficient buffer zones;
 6. Property currently being used to its full and beneficial use."
(Minutes of 5/23/94 at 3).
The instant appeal followed.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). On review, the Supreme Court examines the record to determine whether "competent evidence" supports the Superior Court judge's decision. R.J.E.P. Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).
Relief Sought
A dimensional variance also known as Viti variance or deviation "affords relief from provisions that govern area and setback restrictions and comes into play only when the project involves a permitted use." Northeastern Corp. v. Zoning Bd. ofReview of Shoreham, 534 A.2d 603, 605 (R.I. 1987). (Citation omitted). A special use, formerly known as a special exception, "contemplates a permitted use when under the terms of an ordinance the prescribed conditions therefor are met"; the grant of a special use permit then creates ". . . a conditionally permitted use. . . ." Bernstein v. Zoning Bd. of Review of EastProvidence, 99 R.I. 494, 497, 209 A.2d 52, 54 (1965). ". . . [A] conditionally permitted use, which is a euphemism for a use permitted by means of special exception, is [not] synonymous with the phrase `permitted use' for purposes of application of the Viti rule." V.H.S. Realty Inc. v. Zoning Bd. of Review of EastGreenwich, 120 R.I. 785, 792, 390 A.2d 378, 392 (1978). Consequently, "the Viti rule only applies where the relief sought is for a permitted use, never where the applicant seeks both a [Viti variance or] deviation and a special exception. . . ."Id. (citing Sun Oil Co. v. Zoning Bd. of Review, 105 R.I. 231,251 A.2d 167 (1960)). Accordingly, a dimensional variance for height relief is not appropriately sought.
Health Center seeks a dimensional variance for relief from building height limitation and the grant of a special use permit for site renovations, including the addition of several new north wings and one (1) additional level to its existing building. Because Health Center's present use is a conditionally permitted use, Health Center actually seeks a successive special use permit. In such a case, where, as here, "the use sought is of the same character as that granted by the prior special use permit, but a grant thereof would result in a substantial intensification of the prior use, the landowner "must proceed to obtain a special [use permit] therefor in accordance with the provisions of the enabling act and the ordinance." Warner v. Bd. of Review ofNewport, 104 R.I. 207, 211-12, 243 A.2d 92, 94-95 (1968). Accordingly, a special use permit is the relief that is appropriately sought.
Special Use Permit
Section 5.4 of the Ordinance allows a nursing home in an R-4 residential zone by special use permit and section 11.33 provides the Board with power to grant a special use permit. It states,
 The Board shall have the authority to grant special exceptions to the terms of th[e] ordinance, upon which such board is specifically authorized to pass under th[e] ordinance, in appropriate cases and subject to appropriate conditions and safeguards, in harmony with the general purpose and intent of th[e] ordinance, or where such exceptions are reasonably necessary for the convenience or the public welfare. 11.33 of the Woonsocket Zoning Ordinance (1971, as amended); see also G.L. 1956 (1991 Reenactment) 45-24-42.
"As a condition precedent to the grant of a special [use permit], an applicant must establish that the relief sought is reasonably necessary for the convenience and welfare of the public. A zoning board of review however, may not deny granting a special [use permit for] a permitted use on the ground that the applicant has failed to prove that there is a community need for its establishment. To satisfy the prescribed standard, the applicant need show only that `neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals." Toohey v. Kilday, 415 A.2d 732, 734-35 (1980). (Citations omitted).
After the hearing, the Board's reasons for denying the special use permit expressly included, in part, (i) the site is limited in terms of its original design and (ii) approval will have an adverse effect on abutting properties, as well as people traversing the area in general. Minutes of 5/23/94 at 3. The special use permit granted in 1975 was conditioned upon the Health Center's not exceeding 199 beds. (Tr. of 5/9/94 at 6). The Board concurred with the advisory opinion of the Planning Department that the existing site has been totally utilized, and several times during the hearing, Board members raised concerns about the effect of Health Center's proposed expansion on the public. The Board had before it evidence that Health Center has inadequate on-site parking and on-site traffic congestion that, at times, spills over onto the street even at the aforementioned capacity. (Tr. of 5/9/94 at 58-59, 83-84). The Board also had before it evidence of impaired access of firefighting and rescue apparatus to all necessary parts of the building (Tr. of 5/9/94 at 84-86, 93-96, 118; Tr. of 5/23/94 at 5-12) and an incomplete or inadequate proposed drainage system (Tr. of 5/9/94 at 67-76, 86-88; Tr. of 5/23/94 at 14-16). Although Health Center's expert witness proposed closing both of the accesses on St. Joseph Street and adding a third access on Maple Street, for safety purposes, Eldridge required the southerly access on St. Joseph Street to remain open. (Tr. of 5/23/94 at 4). The Board's decision to deny a special use permit is supported by substantial evidence that the proposed use or its location would have a detrimental effect on the public health, safety, welfare and morals and is not reasonably necessary for the convenience or welfare of the public.
Traditionally, considerations of public health and welfare are afforded the greatest weight when reviewing a zoning board's decision to grant or deny a special exception. Mendosa v.Corey, 495 A.2d 257, 263 (R.I. 1985). A review of the record indicates that Health Center has failed to satisfy its burden that neither the proposed use nor its location on the site would have a detrimental effect on the public health, safety, welfare or morals. See Dean v. Zoning Bd. of Review of Warwick,120 R.I. 825, 830, 390 A.2d 382, 385 (1978).
For the foregoing reasons, this Court finds that the Board's decision to deny the application for relief is supported by reliable, probative and substantive evidence, and that substantial rights of the petitioner have not been thereby prejudiced. Accordingly, the Board's decision is hereby upheld.
The counsel shall present the appropriate judgment for entry.
[1] Section 5.4 of the Woonsocket Zoning Ordinance allows a nursing home in an R-4 district by grant of a special use permit. Section 6.243 of said Ordinance provides that, "No building shall exceed two (2) stories or thirty (30) feet in height, unless each side yard is increased over the required minimum by ten (10) feet for every five (5) feet or fraction thereof of additional height over thirty (30) feet. In no case shall the height exceed fifty (50) feet. Woonsocket Zoning Ordinance (1971, as amended).