DECISION
Before the Court is an appeal from a decision of the Zoning Board of Review of the City of Warwick (hereinafter referred to as the Board). The plaintiffs seek a reversal of the Board's decision, dated March 10, 1993, denying them, inter alia, a special exception to construct a miniature golf course in a "general business" zone. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
FACTS/TRAVEL
Alan and Paul DeFusco (hereinafter referred to as the Plaintiffs) own property located at the intersection of Lambert Lind Highway and Greenwich Avenue in Warwick and designated as Lots 474 and 491 on Assessor's Plat 273. Said property is located in an area zoned general business. Desiring to construct a miniature golf course facility on these lots, Plaintiffs filed an application with the Board requesting a special exception.[1]
See Table 1-414 of the Warwick Zoning Ordinance (noting that such a use is allowed in a general business zone only by special exception). Plaintiffs are also seeking relief from the requirement that no parking spaces be allowed within ten feet of the property line, § 701.3 of the Warwick Zoning Ordinance, and other deviational relief.
The Board held a public hearing regarding the Plaintiffs' requested relief on November 24, 1992. Testimony in support of the application was first given by Paul DeFusco, co-owner of the subject property. Mr. DeFusco testified that the proposed business hours for this facility would be from 10 a.m. to 11 p.m., 7 days per week from May through October; the facility would be closed the rest of the year. (Tr. at 91). Mr. DeFusco further testified that ingress and egress would be exclusively on Greenwich Avenue, that the golf course area would have lighting three feet above the ground while the clubhouse and parking area would have floodlights directed away from the abutting residential property, and that a six-foot stockade fence would be erected on the boundary line with the abutter's land. (Tr. at 91-92). Next to testify was Francis J. McCabe, Jr., a real estate expert. Mr. McCabe testified that it was his opinion that the proposed use would not diminish the value of surrounding properties, that it was not inimical to public health, safety and welfare, and that it would not generate the kind of noise that would be considered a nuisance. (Tr. at 99-100, 103-04). Subsequently, the Board heard from E. Raymond Crossman, a traffic engineer. Mr. Crossman testified that from a traffic perspective, the proposed use would not have an adverse impact on the health, safety, welfare and morals of the community due to the low traffic generation which this use would create; no traffic hazards would be created. (Tr. at 110). Mr. Crossman further testified that if the petition is granted, there would be sufficient parking on site to accommodate all customers even during peak hours. (Tr. at 107-09).
Several neighborhood groups voiced objections to the application. Members of the Pontiac Village Association, the United Neighbors of Greenwood Incorporated, the Warwick Historical Society, and the Historic District Commission all came forward noting that this neighborhood has historic significance and thus deserves some protection. These groups uniformly expressed concern that this petition, if granted, would diminish the historical value of the area. The Board also heard testimony in opposition to the application from Edward Phillips, a real estate expert, who testified that the proposed use would be harmful to the neighborhood in that it would (1) violate Warwick's comprehensive plan and zoning ordinance; (2) cause a depreciation in value in the surrounding properties; (3) create more traffic, and (4) disturb neighboring residences at night with the excess noise and light. (Tr. at 121-24, 126). Finally, several individuals registered as being present and against the petition.[2]
Following the hearing, the Board voted unanimously to deny Plaintiffs' request for relief and issued a decision on March 10, 1993, setting forth the following pertinent findings of fact:
 (6) That the area in which the proposed use would be located is zoned General Business, with small family type businesses located along Greenwich Avenue, a church, a library and a playground. This area is known as the Pontiac section of Warwick. The Pontiac Mill has played an important part in the history of the area. The proposed use would infringe into this area.
 (8) That the board feels the City Council has rezoned surrounding and subject property to General Business from an industrial zone to meet the criteria of its Land Use Plan. The nature of the neighborhood has been changing to businesses of low intensity. Subject property is located at the gateway to Pontiac Village.
 (9) That within the triangle that subject property is located there are two homes and with the seasonal operation May to October, when windows are open would have a harmful affect because of the noise, traffic and lighting that would be produced by a miniature golf course.
 (10) That most miniature golf courses around the state are located within a heavy commercial area. This area is not heavy commercial.
 (12) That the traffic in the neighborhood will be increased because the only ingress and egress is along Greenwich Avenue.
 (14) That the dimensional variance requested by the Petitioner would not be reasonably necessary for the full enjoyment of the permitted use. Without this variance the petitioner would not suffer more than a mere inconvenience, and the neighboring property would be substantially injured, and its appropriate use substantially impaired.
 (15) That the special exception requested by the Petitioner would not be reasonably necessary for the convenience and welfare of the public, and would be detrimental to the general health, welfare, and morals and not in harmony with the community.
From this decision, Plaintiffs filed the instant appeal asserting that the Board's decision was clearly erroneous in view of the reliable, probative, and substantial evidence of record and that the decision was arbitrary, capricious, and an abuse of discretion.
STANDARD OF REVIEW
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D) which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
THE SPECIAL EXCEPTION
It is well established that an applicant seeking to obtain a special exception must satisfy the rules and standards laid out in the Town Ordinance permitting such relief. See Sea ViewCliffs, Inc. v. Zoning Bd. of Review, 112 R.I. 314, 309 A.2d 20
(1973); Klowan v. Zoning Bd. of Review, 99 R.I. 252, 253,207 A.2d 42 (1965). These rules and standards governing the exercise of a board's authority to grant a special exception are ". . . conditions precedent which must be met" before the zoning board is authorized to grant the special exception. Guiberson v. RomanCatholic Bishop, 112 R.I. 252, 258-59, 308 A.2d 503, 506-07 (1973). Where there is any evidence of probative force in the record which negates any of the conditions precedent set forth in the zoning ordinance, a court on appeal will not ordinarily weigh it and the board's decision must stand. Thomson Methodist Churchv. Zoning Bd. of Review, 99 R.I. 675, 680, 210 A.2d 138, 141 (1965). In the absence of such evidence, the conclusion of a court on appeal will be otherwise, provided, however, that the applicants have by competent evidence satisfied all of the prescribed standards and established the existence of all of the conditions precedent. Id.
Section 904.5 of the 1988 Warwick Zoning Ordinance[3]
provides as follows:
 "In appropriate cases and subject to appropriate conditions and safeguards, the zoning board of review is empowered to grant special exceptions to the terms of this ordinance in harmony with its general purpose and intent and where the exception is reasonably necessary for the convenience and welfare of the public . . . [A]ll special exceptions are subject to the requirements of D) . . . below:
 . . . .
 D) . . . [T]he board shall make and set down in writing specific factual findings that demonstrate that the proposed special exception is set forth specifically in this zoning ordinance, that the proposed special exception will not substantially injure the use and enjoyment of nor significantly devalue neighboring property, and that the granting of the special exception will not be detrimental to the general health, welfare and morals of the community.
With respect to the requirement that the proposed special exception "not substantially injure the use and enjoyment of nor significantly devalue neighboring property," the Board heard relevant testimony primarily from two witnesses: Mr. Francis J. McCabe, Jr. (for the petitioners) and Mr. Edward Phillips (for the remonstrants). Mr. McCabe, a real estate expert, testified that the proposed use would benefit the area and its people, and that it would in no way harm the use, enjoyment, or value of any of the surrounding properties. (Tr. at 98, 100, 103). McCabe also stated that from a real estate perspective, this use would not generate the kind of noise that would be considered a nuisance. (Tr. at 100). Moreover, McCabe noted:
 This is not a high intensity use, it's a low use only part of the year but it will bring some new people into the area . . . . If Pizza Hut or McDonald's or someone were to go in there I would say that would be intensive and they would provisions of the zoning board but the proposal in my judgment is not a high intensity use. [sic] (Tr. at 99).
On the other hand, Mr. Phillips, also recognized by the Board as a real estate expert, testified that the proposed use would be harmful to the neighborhood because it would entail "something happening in a neighborhood at eleven o'clock at night for seven months [when] I know a lot of the people in there go to bed at 9 o'clock or 10 o'clock." (Tr. at 126). Moreover, upon being asked if he had an opinion as to whether the proposed use will cause a depreciation in the value of properties in the area, Phillips responded: "Yes, it all goes along with the fact that it doesn't fit in the oddball is out. There is no question that it is going to hurt in that particular triangle because it's going to bring in a new use." (Tr. at 122; see also tr. at 121, 126). In addition, Phillips noted "I feel as though this . . . use is of a high impact . . . generating more people and more cars; . . . it just isn't a good idea to have [it] in a low intensity business area [like this] and also where the homes are in that section . . . ." (Tr. at 122-23).
Both real estate experts thus presented conflicting evidence concerning the effect the proposed use would have on neighboring properties. Where there is conflicting testimony from equally qualified experts and substantial evidence exists on both sides of the controversy, the better rule is to limit the extent of judicial review of the zoning board's decision; the board, which had before it the individual witnesses and had the opportunity to judge their credibility, was in a better position than the court to resolve the conflict.[4] Mendonsa v. Corey, 495 A.2d 257, 263 (R.I. 1985). See also R.I.G.L. § 45-24-69. Moreover, "it is settled [law] that a zoning board's decision will not be disturbed if there is any legally competent evidence upon which it may reasonably rest." Thomson Methodist Church, 99 R.I. at 681, 210 A.2d at 142 (emphasis added). In Thomson, the only evidence which supported the board's findings came from nonexpert witnesses and the Court, in overrruling the board, held that their lay judgments had no probative force against the testimony of experts. See id; see also Smith v. Zoning Bd. of Review,103 R.I. 328, 334, 237 A.2d 551, 554 (1968). The facts in the instant case, however, are clearly distinguishable from those in Thomson. Here, as has been shown, there was legally competent testimony, that of Edward Phillips — a real estate expert, which negates at least one of the conditions precedent set forth in the zoning ordinance. The Board thus had before it probative evidence upon which to base its decision, and the decision must stand. SeeThomson Methodist Church, 99 R.I. at 680, 210 A.2d at 141.
Plaintiffs contend that the Board's decision was not supported by substantial evidence of record and constituted an abuse of discretion because, among other things, no expert testimony was presented in the area of increased traffic to rebut that of their traffic expert, E. Raymond Crossman; as a result, they feel they are entitled to the relief sought.[5] Only Edward Phillips and certain other individuals spoke for the objectors on this issue and their testimony, according to Plaintiffs, is not probative and cannot be used to support the Board's decision.[6]
This Court is mindful that a zoning board's decision to deny a petition for a special exception on the issue of traffic must be based on legally competent evidence that the proposed use created an intensification of traffic congestion or a traffic hazard.[7] See Thomson Methodist Church, 99 R.I. at 682, 210 A.2d at 142. Lay testimony regarding whether the requisite traffic congestion or hazard would follow the grant of the special exception is not probative due to a lack of expertise in the testimony. See Salve Regina v. Zoning Bd. of Review,594 A.2d 878, 880-82 (R.I. 1991); Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980); Piccerelli v. Zoning Bd. of Review, 101 R.I. 221 [107 R.I. 221], 226, 266 A.2d 249, 252 (1970); Thomson Methodist Church, 99 R.I. at 682, 210 A.2d at 142. Plaintiffs in the instant case are thus correct in stating that no probative evidence exists on the record to justify reference to traffic issues as a basis for denial of the special exception. However, in this case, unlike in both Toohey and Thomson, the Board still had before it legally competent evidence (apart from the traffic issue) upon which it could reasonably have rested certain of its findings. As a result, the Board's decision should not be disturbed. See ThomsonMethodist Church, 99 R.I. at 681, 210 A.2d at 142.
THE DEVIATIONAL RELIEF
Plaintiffs, in addition to their request for a special exception, also petitioned for a deviation from the requirement that no parking spaces be allowed within ten feet of the front or side lot lines. See Warwick Zoning Ordinance § 701.3.[8] In denying this request, the Board invoked the now familiar "more than a mere inconvenience" standard. (See decision letter, finding #14). The Rhode Island Supreme Court, however, has held that "the Viti rule only applies where the relief sought is for a permitted use, never where the applicant seeks both a deviation and a special exception, . . ." V.S.H. Realty, Inc. v. Zoning Bd.of Review, 120 R.I. 785, 792, 390 A.2d 378, 382 (1978) (citingSun Oil Co. v. Zoning Bd. of Review, 105 R.I. 231, 251 A.2d 167
(1969))[9]. The Viti doctrine is thus inapplicable in this case; Plaintiffs must satisfy the prescribed special exception standard(s) for all aspects of their petition. See id. Because this Court has already found that the Board had before it sufficient grounds to deny the special exception, said deviational requests are moot.
After a thorough review of the entire record, this Court finds that the decision of the zoning board denying Plaintiffs the relief sought is supported by reliable, substantial, and probative evidence of record. The Court further finds that said decision is not arbitrary or capricious, and it is not characterized by any abuse of the Board's discretion. Substantial rights of the Plaintiffs have not been prejudiced. Accordingly, the Board's decision is hereby upheld.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] This petition would necessarily entail removing the existing structure on the lot, a home which may have historic significance. Plaintiffs have stated that they are open to any options which could preserve it (i.e. moving it or donating it). (Tr. at 90).
[2] Numerous letters and a petition in opposition to the proposed use were also submitted to the Board.
[3] The parties have stipulated that the Warwick Zoning Ordinance adopted June 20, 1988, as amended, was the ordinance in effect at the time of the hearing before the zoning board in this case.
[4] Likewise, there were conflicting statements made surrounding the requirement that the special exception be "in harmony" with the "general purpose and intent" of the Warwick Zoning Ordinance. Section 103 of the Ordinance provides, inter alia, that said ordinance is "designed to protect existing residential neighborhoods . . . ." On this point, McCabe testified that the proposed use "in no way encroaches into a residential area." (Tr. at 99). Phillips, however, testified that the use would, in fact, constitute an encroachment into the A-7 residential zone close-by. (Tr. at 124, 127). Therefore, this same reasoning (and that which immediately follows) would apply here as well to sustain the action taken by the Board.
[5] To reiterate, Crossman testified that the traffic generated by the proposed use would not create a hazard in the area and that from a traffic perspective, the proposed use would not have an adverse impact on public health, safety, welfare and morals due to the low traffic generation. (Tr. at 110).
[6] During his examination, Phillips admitted that he could not qualify as a traffic expert. (Tr. at 123).
[7] A mere increase in traffic at the site of a proposed use is not a valid zoning criterion unless it is shown that it will intensify the congestion or create a hazard. Toohey v. Kilday,415 A.2d 732, 737 (R.I. 1980).
[8] There was also evidence that Plaintiffs were seeking relief from Section 505 of the Ordinance.
[9] In so holding, the V.S.H. Realty Court noted that a use permitted by means of a special exception is not synonymous with the phrase "permitted use." Id.