DECISION
This is an appeal from a decision of the Zoning Board of Review of the Town of Tiverton (Board). The plaintiff, Church Community Housing Corporation (Church), is appealing the Board's September 3, 1997 decisions denying its petitions for a special use permit and a variance to construct six townhouse dwellings on a single lot. Jurisdiction is pursuant to G.L. 1956 §45-24-69.
Facts/Travel
Church initiated plans for the development of six townhouse buildings, each housing three separate apartment units on a single lot of land in Tiverton. Church obtained financial commitment for the purchase of the proposed development site, designated as Lot 28 on the Tax Assessor's Plat 204. The site is located in an R-30 zoning district. Such a district requires a special use permit for multifamily housing pursuant to the Tiverton Zoning Ordinance, Art. IV, § 2 (c). Additionally, all zoning districts allow only one structure housing a principal use to be built on a single lot without zoning relief pursuant to Tiverton Zoning Ordinance, Art. V, § 2 (b). Thus Church, in addition to requesting a special use permit, also petitioned the Tiverton Zoning Board for a variance for relief from Art. V, § 2 (b) to permit more than one principal use on a single lot.
On September 3, 1997, the Board held an advertised, public hearing lasting approximately four hours. Church offered the supporting testimony of the following witnesses and experts: Stephen Ostiguy, executive director of Church; Arthur Salisbury, project architect; Donna Jakubowski, president of Phoenix Property Management; Susan Nilson, civil engineer/project manager for Coastline Engineering; James Houle, certified real estate appraiser and licensed real estate broker; and Dennis Taber, traffic expert. Each spoke of the development's potential impact on the community within his or her particular field of knowledge. Mr. Ostiguy testified that the project would provide additional affordable housing to the community. (R. at 13-17) Mr. Salisbury discussed the design of the structures as consistent with existing residences in the immediate vicinity. (R. at 54-55) Ms. Jakubowski described the tenant application procedure and facility maintenance. (R. at 65-69) Ms. Nilson testified as to drainage concerns and sanitary sewerage disposal (R. at 106-107) Mr. Houle discussed the project's potential impact on neighboring property values. (R. at 131-133) With respect to area traffic, Mr. Taber opined that the project's impact would be negligible. (R. at 163-179) Citizens of Tiverton in attendance spoke out against the petitions, voicing concerns as to the project's impact on area school enrollments, property values, traffic, and aesthetics. (R. at 186-200)
At the conclusion of the hearing, the Board denied both petitions. The Board articulated the same two reasons for each of the denials. The Board found that the petitions were neither in conformance with the Comprehensive Community Plan nor in the best interest or welfare of the people. Church filed a timely appeal to this Court.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 "(1) In violation of constitutional, statutory or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
Special Use Permit
A special use permit allows for "conditionally permitted uses." Westminster Corp. v. Zoning Bd. of Review, 238 A.2d 353
(R.I. 1968). The power of a zoning board to grant a special use permit emanates from the Zoning Enabling Act of 1991. G.L. 1956 § 45-24-57 (A)(5). A special use permit may be granted by a zoning ordinance when the ordinance specifies the particular use authorized by special use permit, describes the conditions and procedures for the special use categories, establishes criteria for special use permits that conform to the ordinance and complies with the constitutional due process requirements. G.L. 1956 § 45-24-42. Typically, a special use permit will be granted by a zoning board if it finds the use not inimical to the convenience, welfare and safety of the public. Bamber v. ZoningBd. of Review of Foster, 591 A.2d 1220, 1223 (R.I. 1991).
The aforementioned criteria are contained in the Town of Tiverton Zoning Ordinance, adopted on June 27, 1994. (Article IV. District Use Regulations, Article V. District Dimensional Requirements, Article XV. Zoning Board of Review) Of note, Article XVI Sec. 2 (a) provides that a special use permit shall be permitted if, in the opinion of the Board, the public convenience and welfare are served; the use is not detrimental to the public health, safety, morals or welfare; the use is compatible with neighboring uses and will not adversely affect the general character of the area; it does not create a nuisance nor hinder or endanger vehicular or pedestrian movement; adequate provisions for water service, sanitary sewage disposal and fire protection are established and; it is compatible with the Comprehensive Community Plan.
On appeal, Church contends that it has met its burden in satisfying these criteria. Church states that each of its witnesses, some of whom served in an expert capacity, addressed a particular criterion for a special use permit. This "detailed, competent" testimony served to satisfy each criterion of the special use permit test. (Memorandum of Plaintiff Church Community Housing Corporation at 11.) In particular, having met its burden as to the criteria, Church notes that the Board's only option was to grant the special use permit, as "[u]nder the Tiverton Zoning Ordinance, a use designated as a special permit use shall be permitted if the following requirements are met. . . ." (Memorandum of Plaintiff Church Community Housing Corporation at 2. citing Tiverton Zoning Ordinance, Art. XVI, § 2)
The Tiverton Zoning Ordinance, Article IV, § 2 (c), allows a multifamily structure (singular) by special use permit. This section must be read together with Article V., District Dimensional Requirements, § 2 (b) of the Tiverton Zoning Ordinance which states, "[i]n any district, not more than one (1) structure housing a permitted principal use, or principal use allowed by special use permit, may be erected on a single lot. . . ." In the instant matter, Church seeks to construct six, separate multifamily dwellings, each housing three units, on a single lot. However, Church's special use permit request is flawed at its inception, for six multifamily uses are not conditionally permitted via the ordinance. Accordingly the relief sought by Church is not permitted under the Tiverton Zoning Ordinance precluding Church's attaining relief pursuant to Art. IV, § 2 (c).
Dimensional and Use Variances
Additionally, Church requested a dimensional variance in its second petition before the Board. Church states that it presented evidence demonstrating "that there was `no other reasonable
alternative to enjoy' the legally permitted beneficial use of multifamily housing on the site," thus meeting the dimensional variance standard. (Memorandum of Church Community Housing Corporation at 12.)
The two categories of variance are the dimensional variance and the use variance. R.I.G.L. § 45-24-31 (61) A dimensional variance grants
 [p]ermission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. Id.
A dimensional variance merely allows a relaxation of one or more of the regulations under which a permitted use may be exercised, such as building height, setbacks, and parking regulations. Roland F. Chase, Rhode Island Zoning Handbook (1993). A permitted use is a use permitted under a zoning ordinance as a matter of right, not by a use variance or special use permit. V.S.H.Realty, Inc. v. Zoning Bd. of East Greenwich, 120 R.I. 785,390 A.2d 378 (1978). Viti articulates the standard a petitioner must satisfy in order to attain zoning board approval for a dimensional variance. Viti v. Zoning Board of Review, 92 R.I. 59,166 A.2d 211 (1960), R.I.G.L. § 45-24-41 (D)(2). The petitioner seeking such relief must satisfy the "more than a mere inconvenience" standard. Sako v. DelSesto, 688 A.2d 1296 (R.I. 1997).
The Zoning Enabling Act of 1991 defines a use variance as
 [p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance. R.I.G.L. § 45-24-31 (61)(a).
A petitioner must demonstrate "the inability to use the land for any beneficial use" to meet the use variance standard. R.I. Hosp.Trust Nat. Bank v. East Providence Zoning Bd., 444 A.2d 862 (R.I. 1982).
Article XVII, § 2 of the Tiverton Zoning Ordinance Act delineates the requirements for variance relief. The petitioner must demonstrate that such relief will not be contrary to the public interest; that the granting of the requested variance will not alter the general character of the surrounding area; and that in allowing relief from the provisions of this ordinance, the Board shall grant the least variance from the provisions needed to remove the unnecessary hardship. Id. The Tiverton Zoning Ordinance standards as to a dimensional and use variance mirror the Zoning Enabling Act language. Id.
Church sought a dimensional variance in its petition before the Tiverton Zoning Board of Review. Church's architect for the project, Arthur Salisbury, testified that the design, six three-unit buildings was chosen for the project because it was more in keeping with the neighboring structures, single-family, two-story houses, as opposed to one larger building. (R. at 53-55) Stephen Ostiguy, executive director of Church, testified that the proposed project site was selected because management of the site, together with neighboring units under proposed Church ownership, would be cost effective. (R. at 14-22) Church argues that this testimony, along with other testimony presented at the hearing, demonstrated that there was no other reasonable alternative to enjoy the legally permitted beneficial use of multifamily housing on the site.
The Board denied the dimensional variance requested by Church. Dimensional relief is warranted when a petitioner is precluded from the full enjoyment of the use of his property forpermitted purposes by an insistence upon a literal enforcement of area restrictions. Sun Oil Co. v. Zoning Bd. of Review ofWarwick, 105 R.I. 231, 251 A.2d 167 (1969). However, a dimensional or Viti variance ". . . only applies where the relief sought is for a permitted use, never where the applicant seeks both a deviation and a special exception, . . . ." V.S.H.Realty. Inc. v. Zoning Bd. of Review, 590 A.2d 378, 380 (R.I. 1978). Church seeks to develop a single lot by constructing six multifamily structures. Article V, § 2 (b) of the Tiverton Zoning Ordinance allows only one structure housing a permitted use, or principal use by special use permit, per lot. The record demonstrates that Church is requesting a dimensional variance for a use that is not permitted under the ordinance and furthermore is not seeking the least relief necessary under the Tiverton Zoning Ordinance, Art. XVII, § 2 (a)(5). Accordingly, the Board's denial of the variance due to Church's failure to demonstrate the lack of any beneficial use for the lot is supported by the reliable, probative and substantial evidence of record.
Findings of the Board
Church also argues that the Board's denial of its petitions was unsupported by findings of fact and other supporting rationale as required under the Zoning Enabling Act and Tiverton Zoning Ordinance. Furthermore, Church argues that the decision is unreviewable due to the alleged lack of findings of fact and thus the Board must be reversed as a result of its failure to comply with the decision making standards established in the Zoning Enabling Act and the Tiverton Zoning Ordinance.
In considering an appeal from a zoning board of review, the Court is required to review the record of the hearing before the Board. G.L. 1956 § 45-24-69 (C) In reviewing a board's decision the court must examine the entire record to determine whether "substantial evidence" exists to support the board's finding. Salve Regina College v. Zoning Bd. of Review,594 A.2d 878 (R.I. 1991) (citations omitted). A zoning board of review is required "`to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review.'" C.P.W. v. City of Cranston,684 A.2d 689, 691 (R.I. 1996) (citing Thorpe v. Zoning Board ofReview of North Kingstown, 492 A.2d 1236, 1236-1237 (R.I. 1985)). Zoning boards that fail to comply with such obligations run the risk of reversal if the court is unable to find sufficient grounds for the decision. Hopf v. Board of Review of the City ofNewport, 120 R.I. 275, 288, 230 A.2d 420, 428 (1967). If the Court is able "to ascertain from the record the reasons for the board's decision," Richards v. Zoning Board of Review of the Cityof Providence, 100 R.I. 212, 200, 213 A.2d 814, 818 (1965), and said decision is supported by substantial evidence, it will be upheld.
In denying Church's petition, the Board found the requested relief to be in conflict with the Comprehensive Plan. (R. at 216) As the ordinance prohibited more than one principal use on the subject lot and further, specifically omitted multifamily housing per a special exception, the Board's granting said relief would have been in excess of their statutory authority and in violation of ordinance provisions.
Although Church was not entitled to special exception and variance relief with respect to its petitions, the Board nevertheless considered Church's petitions and the testimony and evidence offered in support of and in objection to them. Following the public hearing, the Board held a private executive session at which time it reviewed and discussed the petitions before it. (R. at 207) The transcript of the executive session required eighteen pages of the record. Board member Williamson noted that expert testimony as to the project's impact on school enrollments was not presented. (R. at 208) The Board reviewed the project's impact on the welfare of the community as well. (R. at 209-211). After the town solicitor articulated to the Board the special use standard, essentially that such relief must not be inimical to the best interest or welfare of the people, the Board denied the petitions for not being in the "best interest of" nor in "the best welfare of the people." (R. at 220) The record demonstrates that the board did support its decision with sufficient grounds. The Court finds the record to be adequate in that support for the Board's decision can be reasonably and readily gleaned from the record. Travers v. Zoning Board ofReview, 101 R.I. 510, 225 A.2d 222 (1967).
Finally, Church, relying on Wyss v. Zoning Board of Warwick,99 R.I. 562, 209 A.2d 225 (1965), notes that the prior granting of a special exception multifamily structure on the same property in 1988 is relevant to the Board's decision making process. However, the fact that in another case a board of review granted a variance or special exception under similar circumstances is not a sufficient reason for overturning a decision denying that very same relief. H.J. Bernard Realty Co. v. Zoning Board ofReview, 96 R.I. 390, 192 A.2d 8 (1963). The Board did consider
the prior petition, as it is entitled to do. Wyss, 209 A.2d at 227.
Upon review of the entire record, this Court finds that the decision of the Board is supported by reliable, substantive and probative evidence and there is no violation of constitutional, statutory or ordinance provisions. The Board did not act in excess of authority granted to it by statute or ordinance. The Board's decision is not clearly erroneous in view of the record nor is it arbitrary or capricious. There are no errors of law or procedure such that substantial rights of the appellant were prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.